OPINION.
{¶ 1} Plaintiff-appellant the State of Ohio appeals from an order suppressing statements made by defendant-appellee Dawna Spellman to police. The State contends that the trial court abused its discretion by permitting the filing of an untimely motion to suppress, and that the trial court erred by granting the motion. The State contends that Spellman was not in custody when she was questioned, and that, after having asked to see a lawyer, she voluntarily chose to speak with the police without first seeing her lawyer.
 {¶ 2} We conclude that the trial court did not abuse its discretion in permitting the filing of an untimely motion to suppress, where the motion to suppress was filed eight days before trial, and where the State never claimed, in the trial court, to have been prejudiced by the untimeliness of the motion. We further conclude that the trial court did not err by granting the motion to suppress. The videotape of the interrogation indicates that Spellman was being questioned in a locked interrogation room concerning allegations that she had raped her four-year-old child. The trial court decided not to credit a police officer's testimony that Spellman subsequently elected, freely and voluntarily, to speak with the officers. Based upon our review of the record, we conclude that the trial court's decision not to credit this testimony is not against the manifest weight of the evidence. Accordingly, we conclude that the trial court did not err in granting the motion to suppress, and the judgment of the trial court is Affirmed.
 I {¶ 3} The trial court made the following findings of fact and conclusions of law:
 {¶ 4} "1. Defendant and her companion were transported from their residence to the Urbana Police Department for questioning.
 {¶ 5} "2. They were not restrained during transport.
 {¶ 6} "3. They were never advised that they were arrested.
 {¶ 7} "4. The Court finds that the Defendant was a primary suspect in the investigation involving the children of the Defendant.
 {¶ 8} "5. The children of the Defendant are three and four years old.
 {¶ 9} "6. Defendant was separated from her companion at the police station and remained so separated for more than three hours.
 {¶ 10} "7. Defendant was questioned by Officer Pratt. The questioning process was videotaped.
 {¶ 11} "8. Officer Pratt left the room where Defendant was located and Officer Reese entered the room.
 {¶ 12} "9. Officer Reese began to question the Defendant and the Defendant asked to speak to her attorney. The questioning process was being videotaped.
 {¶ 13} "10. Officer Pratt turned off the video machine because of that request.
 {¶ 14} "11. Officer Pratt left the observation room and pursued other duties.
 {¶ 15} "12. Defendant was never permitted to speak to her attorney.
 {¶ 16} "13. At a later time Officer Pratt was advised that questioning had been resumed by Officer Reese.
 {¶ 17} "14. Officer Pratt was also advised that the Defendant had confessed to the criminal misconduct which forms the basis of the charges in this case.
 {¶ 18} "15. A Children's Services representative subsequently spoke to the Defendant to explain why she was not going to be permitted to visit her children.
 {¶ 19} "16. The Defendant eventually signed a waiver of Miranda rights.
 {¶ 20} "17. The lawyer for the Defendant in a number of matters was known to the police department.
 {¶ 21} "18. The lawyer was a local lawyer.
 {¶ 22} "19. The lawyer's office is within two minutes' drive from the police department.
 {¶ 23} "20. The Court finds it interesting that the Defendant's alleged voluntary recanting of her request for a lawyer and her inculpatory statements thereafter were not videotaped.
 {¶ 24} "21. The Court finds that even if Defendant was not a primary suspect and was not required to be given Miranda warnings, the Defendant's expression to be represented by a lawyer was clear-cut and no further questioning should have taken place thereafter."
 {¶ 25} We have reviewed the transcript of the interrogations, as well as a videotape of the interrogations. We would add only that it is clear that Spellman was in a locked interrogation room during all of the interrogations. Also, it was made clear to Spellman, before she asked to see her lawyer, that she was alleged to have had sexual contact with her four-year-old son.
 {¶ 26} Spellman was indicted on one count of Endangering Children in violation of R.C. 2919.22(B)(5), a felony of the second degree; one count of Rape; two counts of Gross Sexual Imposition; and one count of Endangering Children in violation of R.C. 2919.22(A), a felony of the fourth degree. In due course, a trial date was set for May 20 and 21, 2003.
 {¶ 27} On May 12, 2003, Spellman filed a motion to suppress the statements she made to police. That motion was heard on May 19, 2003. At the outset of the hearing, the State objected to the motion to suppress, based upon the fact that it was not timely filed. After stating his objections to the record, the prosecutor said, "But we're ready to proceed. We just want to note our objection to the record." The State did not indicate that it had been prejudiced by the late filing.
 {¶ 28} Spellman's counsel asked the court to permit the late filing, in the interest of justice. The trial court permitted the motion to suppress to be heard, over the State's objection.
 {¶ 29} At the hearing on the motion to suppress, Urbana police officer Todd Pratt and Champaign County Children Services Investigator Tammy Elliott testified. A videotape of Spellman's interview by Urbana police officers was received in evidence, along with a transcript of that interview, in two parts.
 {¶ 30} Following a hearing, the trial court found the motion to suppress to be well-taken, and ordered Spellman's statements to the police suppressed. From the suppression order, the State appeals.
 II {¶ 31} The State's sole assignment of error is as follows:
 {¶ 32} "The trial court erred by sustaining defendant-appellee's motion to suppress."
 {¶ 33} The State first contends that the trial court abused its discretion by permitting consideration of an untimely motion to suppress. Pursuant to Crim.R. 12(D), pretrial motions must be filed within 35 days after arraignment, or seven days before trial, whichever is earlier. But the Rule permits the trial court to extend the time for filing a pretrial motion "in the interest of justice." Although Spellman's motion to suppress was filed eight days before trial, it was filed 53 days after her arraignment on March 20, 2003.
 {¶ 34} In response to the State's objection to consideration of the motion to suppress, which the State made orally, at bar, at the outset of the hearing on the suppression motion, Spellman argued that the court should consider her motion, in the interest of justice, even if it were to be found to be untimely. The trial court noted that Spellman's motion to suppress was not timely filed, but decided to consider it anyway.
 {¶ 35} The State contends that the trial court erred by failing to find, expressly, that the interest of justice required consideration of Spellman's untimely motion. Although the trial court did not expressly indicate, in its oral remarks from the bench at the suppression hearing, that it was deciding to consider the suppression motion, notwithstanding its untimeliness, in the interest of justice, we conclude, from our review of the record, that this was the basis for the trial court's decision to overrule the State's objection.
 {¶ 36} The State argues, also, that the trial court abused its discretion by finding that it was in the interest of justice to consider Spellman's untimely motion to suppress, because the hearing on the motion to suppress, the day before the scheduled trial date, occurred at a time when one of the two police officers who interviewed Spellman was not available to testify. Although the State makes this argument now, on appeal, the record does not disclose that the State made this argument to the trial court in connection with its objection to consideration of the motion to suppress. To the contrary, the State, while noting its objection, informed the trial court that it was "ready to proceed." Based upon the circumstances known to the trial court when it decided to consider Spellman's untimely motion to suppress, we conclude that the trial court did not abuse its discretion in so deciding.
 {¶ 37} The State then argues that the trial court erred by granting Spellman's motion to suppress. The State first contends that because Spellman was not in custody when she requested an attorney, she was not then being subjected to custodial interrogation, and the requirements of Miranda v. Arizona (1966), 384 U.S. 436, 460-61, do not apply. At one point in its brief, the State declares:
 {¶ 38} "The privilege against self-incrimination applies during periods of custodial interrogation," citing Miranda v. Arizona. The particular prophylactic requirements of Miranda v. Arizona are triggered by custodial interrogation. However, the privilege against self-incrimination is not so limited. As a general proposition, questioning by police will usually not offend the privilege against self-incrimination set forth in the Fifth Amendment to the United States Constitution, when that questioning is not conducted while a suspect is in custody, but the privilege against self-incrimination exists at all times, unless it is waived.
 {¶ 39} We have viewed the videotape of Spellman's interrogation. It is clear not only that the door to the room in which that questioning took place was locked, but also that Spellman was aware that the door was locked. It also became clear to her, early during the session, that she was accused of having committed a sexual act with her four-year-old son. Under these circumstances, we conclude that Spellman was in custody while she was being questioned, and when she said, before Miranda warnings had been issued, that she wanted an attorney. Consequently, the State's argument that Miranda v. Arizona is not implicated in this case fails.
 {¶ 40} The State next argues that between the first videotaped interrogation session, at the end of which Spellman asked for her attorney, and the beginning of the second videotaped interrogation session, during which she made some potentially incriminating statements, Spellman initiated contact with the police, and waived her right to counsel. The only direct evidence of this is the testimony of Urbana police officer Todd Pratt at the suppression hearing. From our review of the videotape, it appears that Pratt attempted to get Spellman to confirm, at the outset of the second interrogation session, that she had decided that she wanted to talk to Pratt, but Spellman did not confirm that fact. At most, it is unclear whether Spellman confirmed that fact.
 {¶ 41} Pratt then gave Spellman Miranda warnings, but it appears from the record that her actual waiver of her Miranda rights did not occur until after the interrogation session, when she signed the waiver form.
 {¶ 42} The trial court found it "interesting" that Spellman's alleged voluntary recantation of her request to talk to her lawyer was not videotaped. The trial court evidently decided not to credit Pratt's testimony that Spellman had changed her mind, and had decided, freely and voluntarily, to waive her Sixth Amendment right to consult with counsel before responding to police questioning. Based upon our review of the record, including the videotape, we conclude that the trial court's decision not to credit Pratt's testimony in that respect is not against the manifest weight of the evidence.
 {¶ 43} In short, we conclude that Spellman was in police custody, being questioned by police about alleged criminal conduct, when she asked to see an attorney, even before she had been given any Miranda warnings. Based upon this record, the trial court could find, as it evidently did, that questioning resumed without Spellman having freely and voluntarily waived her right to consult with her attorney before being subjected to further police questioning. Furthermore, although Spellman ultimately executed a waiver of her rights under Miranda v. Arizona, supra, that did not occur until after she had made the incriminating statements she sought to suppress. Under these circumstances, the trial court properly concluded that Spellman's Fifth and Sixth Amendment rights were violated, and properly granted Spellman's motion to suppress. The State's sole assignment of error is overruled.
 III {¶ 44} The State's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
GRADY and YOUNG, JJ., concur.